**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM R. DICENZO, SR. and BUENOS
HILL INC.,

                        Plaintiffs,

      v.

THE CITY OF SARATOGA SPRINGS, *et al.*,

                        Defendants.

1:24-cv-01513 (AMN/DJS)

---

**APPEARANCES:**

**LAW OFFICE OF WILLIAM R. DICENZO**
3462 Junction Boulevard
Jackson Heights, New York 11372
*Attorneys for Plaintiffs*

**JOHNSON & LAWS, LLC**
646 Plank Road – Suite 205
Clifton Park, New York 12065
*Attorneys for Defendants Susan Barden,*
*Albert Flick, Mark Torpey, Sara Boivin,*
*Ruth Horton, Meg Kelly, Joseph O'Neil, III,*
*the City of Saratoga Springs, and*
*the City Planning Board*

**CONWAY, DONOVAN & MANLEY PLLC**
50 State Street – Second Floor
Albany, New York 12207
*Attorneys for Defendant Dillon Moran*

**CAPEZZA HILL, LLP**
30 South Pearl Street – Suite P-110
Albany, New York 12207
*Attorneys for Defendants Alfio Bonacio, Jr.,*
*BJ Kozlowski, Bonacio Construction, Inc.,*
*and B&B Plumbing & Heating*

**OF COUNSEL:**

**WILLIAM R. DICENZO, ESQ.**

**GREGG TYLER JOHNSON, ESQ.**
**OLIVIA G. REINHARDT, ESQ.**

**RYAN T. DONOVAN, ESQ.**
**RYAN E. MANLEY, ESQ.**

**THOMAS A. CAPEZZA, ESQ.**
**ALEXANDRA VON STACKELBERG,**
**ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On December 12, 2024, Plaintiffs William R. Dicenzo, Sr. and Buenos Hill, Inc. ("Buenos") filed a complaint against Alfio "Sonny" Bonacio Jr. ("Bonacio"), BJ Kozlowski ("Kozlowski"), Bonacio Construction, Inc. ("Bonacio Construction"), and B&B Plumbing & Heating (together, the "Bonacio Defendants"); the City of Saratoga Springs (the "City"), the Saratoga Springs Planning Board (the "Planning Board"), Susan Barden, Sara Boivin, Albert Flick, Ruth Horton, Meg Kelly, Joseph O'Neil, III, Mark Torpey, and Dillon Moran (together, the "Saratoga Defendants") (collectively, "Defendants")[1] alleging violations of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 *et seq.*, ("RICO"), 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3).  Dkt. No. 1 ("Complaint").[2]

On April 23, 2025, the Bonacio Defendants filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6).  Dkt. No. 37.  On April 25, 2025, the Saratoga Defendants also filed motions to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. Nos. 38, 41.  Plaintiffs opposed the motions on May 16, 2025, *see* Dkt. No. 45, and the Bonacio Defendants and Saratoga Defendants, except for Defendant Moran, filed replies in further support of their respective motions on June 6, 2025.  Dkt. Nos. 48, 49.  Accordingly, Defendants' motions to dismiss are now ripe for adjudication.

---

[1] Although Anthony "Skip" Scirocco was also named as a defendant, according to the Complaint, Mr. Scirocco was deceased at the time Plaintiffs commenced this action.  *See* Dkt. No. 1 at ¶ 49. Accordingly, the Court lacks subject matter jurisdiction over any claims asserted against him.  *See El-Hajj-Bey v. Rittenband*, No. 24-cv-1046, 2025 WL 486776, at *4 (D. Conn. Feb. 13, 2025) (noting that "[a]n action is void against a defendant who was deceased at the time the action began" (citation omitted)).

[2] Plaintiffs also seek injunctive relief to enjoin the implementation of the Unified Development Ordinance, which they frame as a separate cause of action.  *See* Dkt. No. 1 at ¶¶ 391-398. However, injunctive relief is a form of remedy, not an independent claim.

For the reasons set forth below, Defendants' motions to dismiss are granted.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  The Parties

Buenos is a New York corporation incorporated on April 11, 2017.  Dkt. No. 1 at ¶ 37. Buenos has owned real property located at 254 Washington Street, Saratoga Springs, New York 12866 (the "Property") since July 31, 2017.  *Id.*  Plaintiff Dicenzo is a director and member of Buenos' Board, and a resident of Saratoga Springs, New York.  *Id.* at ¶ 38.

The Bonacio Defendants consist of Bonacio, Kozlowski, Bonacio Construction, and B&B Plumbing & Heating.  *See id.* at ¶¶ 54-57.  Bonacio Construction is a corporation with its principal office located in Saratoga Springs, New York.  *Id.* at ¶ 56.  Defendant Bonacio is the owner and chief executive officer of Bonacio Construction and its subsidiaries.  *Id.* at ¶ 54.  B&B Plumbing & Heating is a partnership with its principal offices located in Saratoga Springs, New York.  *Id.* at ¶ 57.  Defendants Bonacio and Kozlowski are partners in B&B Plumbing & Heating and both reside in Saratoga County, New York.  *Id.* at ¶¶ 54-55.

The Saratoga Defendants consist of the City, the Planning Board, Meg Kelly, Susan Barden, Albert Flick, Mark Torpey, Sara Boivin, Ruth Horton, Joseph O'Neil III, and Dillon Moran.  *See id.* at ¶¶ 39-48, 50-51.  The City is a municipal corporation with a City Council comprised of five elected commissioners who have final approval authority over changes in zoning and the passage of local laws and ordinances.  *Id.* at ¶ 39.  The Planning Board is comprised of

appointees by the City's mayor who, among other things, adopt rules and regulations and prepare recommendations for changes to Saratoga Springs' zoning ordinance. *Id.* at ¶ 40. Defendant Kelly was Deputy Mayor of the City from 2013 to 2017, after which, she became Mayor of the City from 2017 to 2021. *Id.* at ¶ 48. Of particular relevance here, Defendant Kelly presided over the December 21, 2021 City Council meeting that adopted the Unified Development Ordinance ("UDO"). *Id.* Defendants Torpey, Boivin, and Horton served as members of the Planning Board at various times. Defendant Torpey served as a member of the Planning Board since at least 2013 and served as the Chairperson from February 2014 to December 2023. *Id.* at ¶ 45. Defendant Boivin was a member of the Planning Board from at least 2019 through 2021, and served as the acting Chairperson at the April 22, 2021 Board hearing. *Id.* at ¶ 46. Defendant Horton was a member of the Planning Board from 2017 through 2021, served as acting Chairperson at the October 28, 2021 Board hearing, and was present during the majority of Buenos' workshop meetings and Board hearings. *Id.* at ¶ 47. Defendant Barden is the principal planner within the Office of Planning and Economic Development as well as the "chief policy maker" for the City. *Id.* at ¶ 43. Defendant Flick is a Senior Engineering Technician within the City's Department of Public Works, who was responsible for mapping the City's water and sewer districts. *Id.* at ¶¶ 44, 97. Defendant O'Neil is the Deputy Commissioner of Public Works, a position he has held since 2008. *Id.* at ¶ 50. Defendant Moran is the Commissioner of Accounts for the City and serves as City Clerk, Assessor, Insurance Officer, Purchasing Agent, and Records Management Officer. *Id.* at ¶ 51.

**B.  The Complaint**

Though not a model of clarity, Plaintiffs, who are longtime owners of the Property, appear to broadly allege that the Bonacio Defendants conspired with the Saratoga Defendants to pressure Plaintiffs to sell their Property by limiting its use as an auto sales and service business in numerous

ways, which the Court briefly summarizes below. *See, e.g.*, *id.* at ¶¶ 151, 177-178, 183, 191, 268; *see also id.* at ¶ 164 (alleging that Sydney Stark, a non-party, and, like Plaintiffs, a longtime owner of a motor vehicle repair shop, felt compelled to sell his property to Defendant Bonacio after it became surrounded by construction projects operated by the Bonacio Defendants).

As background, in 1976, Plaintiff Dicenzo began leasing the Property for auto sales and service. *Id.* at ¶ 69. Plaintiffs allege that at no point during the time that Plaintiff Dicenzo was leasing the Property did the City notify him that its use for auto sales and service did not comply with the zoning regulations or that he needed any additional permits to operate his business. *Id.* at ¶ 70. In 1983, Plaintiff Dicenzo purchased the Property. *Id.* at ¶ 71. On February 15, 2000, the City passed a law establishing the boundaries of the West Avenue Special Assessment District ("WASAD"), which enabled property owners to share the cost of the planned highway and utility improvements scheduled for construction. *Id.* at ¶¶ 86-87. According to Plaintiffs, their Property was intentionally excluded from the WASAD, *see id.* at ¶¶ 89-94, which limited their ability to attract quality tenants or develop other uses for the Property. *Id.* at ¶ 100. For example, the Property lacks adequate access to both water and sewer utilities, unlike other properties in the same area. *Id.* at ¶¶ 101-102.

In 1990, the City had published a Saratoga Springs zoning ordinance which permitted use of the Property for auto sales and service as of right upon site plan review. *Id.* at ¶ 74. But in 2012, the City changed the Property's zone from commercial to mixed use residential, which banned the Property's use for auto sales and service as of right. *Id.* at ¶ 179. However, implied uses were available pursuant to a special use permit ("SUP"). *Id.* at ¶ 180.

From 1999 to 2018, Plaintiffs used the Property exclusively for auto sales and services. *Id.* at ¶ 81. In August 2018, Buenos assumed control over the Property, and upon learning that the

Property was excluded from the WASAD and lacked access to public utilities, contacted the City to express concerns about the Property's exclusion from the WASAD and the lack of water service. *Id.* at ¶¶ 107-108, 142-143. On October 3, 2018, Plaintiff Dicenzo met with Defendants Barden and Flick and asked why the Property was excluded from the WASAD, to which Defendant Flick responded, "Wouldn't it be nice if all commercial property owners had access, but they do not." *Id.* at ¶¶ 144-145, 147. That same day, Plaintiffs allege that B&B Plumbing mailed a contract to Plaintiff Dicenzo offering to purchase the Property, and further allege that Defendant Barden had knowledge of this offer to buy the Property. *See id.* at ¶¶ 151-152, 176-178. On November 1, 2018, Buenos emailed Defendants Barden and Flick requesting the historical record for the Property and inquiring whether the City had any remedy for the Property's exclusion from the WASAD. *Id.* at ¶ 153.

In October 2019, Buenos improved the roof of the building on the Property by adding a metal protective barrier. *Id.* at ¶ 168. Then, on October 15, 2019, the City issued Plaintiffs a Notice of Violation and Order to Remedy, requiring Plaintiffs to obtain a building roofing permit and approvals from the Design Review Commission before continuing to do work on the Property. *Id.* at ¶¶ 171-172. When Plaintiffs went to the City to explain the repairs and obtain additional information, Defendant Barden advised that the City did not recognize Plaintiffs' use of the Property for auto sales and service and purportedly had no records related to the Property. *Id.* at ¶¶ 173-174.

On March 10, 2020, Plaintiff Dicenzo applied for an SUP. *Id.* at ¶ 187. Plaintiff Dicenzo then attended several workshop meetings in May, June, and July 2020, as well as a Planning Board hearing on May 28, 2020, regarding his SUP application. *Id.* at ¶ 194. During its hearing, Buenos presented its plan to "strip the parking lot, replace the old timber parking lot wall, add a new

mailbox, and install a paver-stone sidewalk . . . to make the parking lot accessible from the side office exits." *Id.* at ¶ 207.[3] The City communicated the importance of sidewalks and pedestrian activity in the area, *see id.* at ¶¶ 210-211, but Plaintiffs expressed concerns with building a sidewalk in an area where there was nothing to connect it with, and that abutted a highway with right-of-way issues. *Id.* at ¶ 209.[4]

After the hearing, Plaintiffs attempted to revise their SUP application to include the City's suggestions, including a sidewalk, and on June 4, 2020, sent updated materials to Defendant Barden. *Id.* at ¶¶ 221-223. In response, Defendant Barden stated that the sidewalk was required to be located off-site of the Property, or at a minimum, in the New York State Department of Transportation right-of-way. *Id.* at ¶ 224. Plaintiffs allege that during a workshop meeting, Defendant Torpey also dismissed Plaintiffs' attempt to include a sidewalk on the Property. *Id.* at ¶ 225. Plaintiffs further allege that this was intentional, claiming that Defendant Torpey discovered that the Property already had an SUP for auto sales and services dating back to the early 1970s. *Id.* at ¶ 226.[5]

---

[3] Buenos modeled its SUP application on 50 West Avenue ("Chow Bella"), a property that is a member of the WASAD, located in the same zone, with an older warehouse-style building improvement and a similarly undefined parking lot. *Id.* at ¶¶ 198-199, 205. According to Plaintiffs, when Chow Bella appeared before the Planning Board on May 14, 2020, there was no discussion regarding providing quality streetscape amenities, civic space, pedestrian accommodations, or screening of the parking lot. *Id.* at ¶ 201. Chow Bella's site plan review was waived and it was granted an SUP with conditions related to its use as a pet grooming, dog park, and retail center. *Id.* at ¶ 203.

[4] Buenos also asked why West Hill Plaza, a separate property, was not required to install sidewalks, pole lighting, or park screening when it made its updates, *see id.* at ¶ 212, and a City representative stated that the changes that West Hill Plaza made did not require an SUP or site plan review. *Id.* at ¶ 220.

[5] Separately, Plaintiffs allege that Defendant Torpey granted Intrada, a $34 million development project, a site plan modification that eliminated many sidewalks, lights, and landscaping based on "value engineering suggestions from the applicant." Dkt. No. 1 at ¶¶ 126-127. Furthermore, according to Plaintiffs, the Bonacio Defendants, who were contractors for Intrada, allegedly reaped

During a workshop meeting on July 9, 2020, the City again rejected Plaintiffs' proposed changes, and Defendant Boivan stated that the Planning Board would not consider Plaintiffs' SUP application until Plaintiffs submitted a formal site plan application. *Id.* at ¶¶ 229-230. On March 4, 2021, Buenos submitted a formal site plan application, *see id.* at ¶ 234, and on April 22, 2021, the Planning Board held a hearing. *Id.* at ¶ 240. During the hearing, Plaintiffs argued that the City's attempt to mandate the installation of a sidewalk was outside its jurisdiction, *see id.* at ¶ 246, and Defendant Boivin explained that Plaintiffs may have to pay a fee if they did not build a sidewalk. *Id.* at ¶ 248. On April 29, 2021, Defendant Torpey sent Plaintiffs a memo discussing the need for more pedestrian characteristics in the surrounding area, *see id.* at ¶ 256, and in response, Plaintiffs sent the City a document preservation letter and demand on May 14, 2021. *Id.* at ¶ 258.

On October 28, 2021, Plaintiffs attended a final Planning Board hearing regarding the SUP and site plan applications. *Id.* at ¶ 264. During the hearing, an attorney for the City stated that the Planning Board "has every right to require a sidewalk be implemented" and "it is a requirement and must be accommodated subject to [Department of Transportation] approval." *Id.* at ¶ 275. "The applicant would have to present to the [Department of Transportation] a plan for an actual sidewalk to be implemented and they will either approve it or deny it." *Id.* In closing remarks, Plaintiffs argued that the Planning Board could not compel private property owners to improve public property. *Id.* at ¶ 282. Defendant Horton, as Acting Chairwoman, then stated that the Planning Board was not ready to approve the SUP and site plan applications, *see id.* at ¶ 283, and on December 13, 2021, the City filed its Notice of Decision denying both applications. *Id.* at ¶

---

a windfall of $5,000 or more as a result of Defendant Torpey's willingness to approve the site modification. *Id.* at ¶ 129.

285.

On December 21, 2021, Plaintiff Dicenzo attended a public City Council hearing during which the UDO was discussed and adopted. *Id.* at ¶¶ 288, 291. The UDO bans vehicle dealerships with any outdoor display, which according to Plaintiffs, "effectively eviscerat[es]" their auto sales and service business and the fair use of the Property. *Id.* at ¶ 289. Plaintiffs allege that during the hearing, Plaintiff Dicenzo planned to publicly call out Defendant Bonacio for bribing Defendant Kelly in exchange for her vote in favor of the UDO, but Defendant Kelly stopped him from speaking in violation of his First Amendment rights. *Id.* at ¶¶ 291-292, 295. Plaintiffs further allege that Defendant Kelly was offered and took a position working for one of Defendant Bonacio's companies in exchange for her vote. *Id.* at ¶ 294.

## C. Defendants' Motions

On April 23, 2025, the Bonacio Defendants filed their motion to dismiss, contending that the Complaint must be dismissed as against them because (i) Plaintiffs failed to comply with Local Rule 9.2; (ii) Plaintiffs fail to state a valid civil RICO claim, and (iii) Plaintiffs fail to state claims under Sections 1983 and 1985(3). *See* Dkt. No. 37-1 at 9-25.

On April 25, 2025, the Saratoga Defendants filed their motions to dismiss. Dkt. Nos. 38, 41. In their motion, the Saratoga Defendants, except for Defendant Moran, make numerous arguments as to why the Complaint must be dismissed as against them, including, *inter alia*, that the Planning Board must be dismissed as a party, Plaintiffs' RICO claims must be dismissed because they are frivolous, and Plaintiffs' Section 1983 and 1985(3) claims must be dismissed for lack of personal involvement and because the Saratoga Defendants are immune. *See* Dkt. No. 38-9 at 17-51. Defendant Moran contends that the Complaint must be dismissed as against him because (i) Plaintiffs failed to comply with Local Rule 9.2; (ii) Plaintiffs lack statutory standing to

9

bring a civil RICO claim against him; and even if they did, (iii) Plaintiffs fail to plead a concrete injury that was proximately caused by him.  Dkt. No. 41-1 at 9-17.

### III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (internal quotation marks omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,"

10

*Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## IV.    DISCUSSION

### A.  The Planning Board

As an initial matter, because the Planning Board is an administrative arm of the City, it is not amenable to suit separate and apart from the City.  "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Schachtler Stone Prods., LLC v. Town of Marshall*, No. 21-cv-1100 (AMN/MJK), 2024 WL 4025862, at *10 (N.D.N.Y. Sept. 3, 2024) (quoting *Town and Country Adult Living, Inc. v. Village/Town of Mount Kisco*, No. 17-cv-8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019)).  "The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted."  *Id.* (citation omitted).  Accordingly, the Planning Board is an improper defendant and the Court dismisses it from this action.  *See Crown Castle Fiber LLC v. Town of Oyster Bay*, No. 21-cv-6305, 2024 WL 1051171, at *1 n.1 (E.D.N.Y. Jan. 19, 2024) (dismissing claims against the town board and zoning board of appeals as improper defendants); *see also Omnipoint Commc'ns., Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (collecting cases).

### B.  RICO

Plaintiffs assert a civil RICO claim against the Bonacio Defendants and the individual Saratoga Defendants,[6] including Defendant Moran, pursuant to Sections 1962(c) and 1962(d) of

---

[6] To the extent that the individual Saratoga Defendants are sued in their official capacities, Plaintiffs cannot enforce RICO against them "because the municipality cannot form the requisite criminal intent to establish a predicate act." *Israel v. City of Syracuse*, No. 21-cv-915, 2021 WL 4777256, at *6 (N.D.N.Y. Sept. 16, 2021), *report and recommendation adopted*, 2021 WL

11

RICO. *See* Dkt. No. 1 at ¶¶ 340-352. "Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity," which "permits a plaintiff to bring a RICO claim for sustaining injuries in his business or property by reason of a violation of [S]ection 1962." *Israel v. City of Syracuse*, No. 21-cv-915, 2021 WL 4777256, at *4 (N.D.N.Y. Sept. 16, 2021) (citing 18 U.S.C. § 1964), *report and recommendation adopted*, 2021 WL 4773232 (N.D.N.Y. Oct. 13, 2021).

### 1. Section 1962(c)

To state a RICO claim under Section 1962(c), a plaintiff must allege that "(1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property by reason of a violation of [S]ection 1962." *Id.* (internal quotation marks and citation omitted). Specifically, a plaintiff must allege four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). This showing must be made as to each individual defendant. *See United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (noting that "[t]he focus of [S]ection 1962(c) is on the individual patterns of racketeering engaged in by a defendant"), *cert. denied*, 486 U.S. 1022 (1988). "Regarding the third and fourth elements, to sufficiently allege a 'pattern of racketeering activity,' a plaintiff must allege at least two acts of 'racketeering activity' that occur within ten years of each other." *Israel*, 2021 WL 4777256, at *5 (quoting 18 U.S.C. § 1961(5)). "Racketeering activity" "include[s] any 'act' indictable under various specified federal statutes[.]" *1567 56th St., LLC v. Spitzer*, 774 F. Supp. 3d 476, 492 (E.D.N.Y. 2025) (citing 18 U.S.C. § 1961(1)) (defining "racketeering activity" to include the offenses of mail fraud, wire fraud,

---

4773232 (N.D.N.Y. Oct. 13, 2021); *see also Liang v. City of New York*, No. 10-cv-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases).

extortion, and money laundering).

Plaintiffs have not adequately alleged that Defendants committed at least two predicate acts of racketeering activity.  First, Plaintiffs' alleged sixth, seventh, and eighth predicate acts do not constitute "racketeering activity" under Section 1961(1).  To plead a plausible RICO claim under Section 1962, a plaintiff must adequately allege that the defendant engaged in actions that qualify as RICO predicates.  *See Wang v. Verizon Commc'ns Inc.*, No. 22-128, 2023 WL 309607, at *2 (2d Cir. Jan. 19, 2023).  Section 1961(1) sets forth an exhaustive list of predicate acts that can constitute a pattern of racketeering activity.  *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

As to the sixth predicate act, Plaintiffs allege that Defendant Moran directed the Planning Board to approve the SUP application submitted by Ten Cees LLC, a non-party, without the need for Ten Cees LLC to make highway improvements, despite the alleged illegal nature of marijuana sales.  Dkt. No. 1 at ¶¶ 310-313.[7]  As to the seventh predicate act, Plaintiffs allege that Defendant Moran "steer[ed] unneeded government contracts to his preferred vendors" and "attempt[ed] to bend the rules" for the benefit of the Saratoga Springs Preservation Foundation.  *Id.* at ¶¶ 316-317. According to Plaintiffs, the Saratoga Springs Preservation Foundation sought to bypass the process of applying for a non-profit tax exemption and sought a retroactive waiver, which Defendant Moran agreed to provide.  *Id.* at ¶ 318.  Plaintiffs also allege that Defendant Moran falsely certified FOIL-requested records to obstruct an inquiry into his racketeering activities.  *Id.* at ¶ 321.  And as to the eighth predicate act, Plaintiffs allege that Defendant O'Neil authorized and supervised

---

[7] Plaintiffs also allege that during a meeting with one of his employees on September 15, 2023, Defendant Moran used a slur when referring to Italians.  Dkt. No. 1 at ¶ 316.  According to Plaintiffs, the employee was fired after her husband expressed his views about panhandling at a City Council meeting.  *Id.* at ¶ 314.  This act also does not constitute a qualified predicate act under Section 1961(1).

the paving of at least three private driveways in exchange for the City's receipt of $1.9 million in federal grants.  *Id.* at ¶ 331.  None of these acts qualify as any of the "racketeering activities" enumerated in Section 1961(1).  *See Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466-67 (S.D.N.Y. 2017) (finding that most of plaintiffs' allegations do not fall within Section 1961(1)'s list of qualifying predicate acts).[8]

Plaintiffs' remaining alleged predicate acts are mail fraud, wire fraud, bribery (and kickbacks), and extortion.  Dkt No. 1 at ¶¶ 126-311.  Mail fraud and wire fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (citing, *inter alia*, Fed. R. Civ. P. 9(b)).  Thus, the elements of mail fraud and wire fraud—"(i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires," *see Williams*, 889 F.3d at 124 (citations omitted)—must be pled with particularity.  *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023).  A scheme to defraud requires the defendant to make a material misrepresentation.  *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 168 (E.D.N.Y. 2024) (citing *Williams*, 889 F.3d at 124).  A misrepresentation is material if it is "likely to be deemed significant to a reasonable person considering whether to enter into the transaction —that is, if it misstates the economic value of the bargain."  *Id.* (internal quotation marks and citation omitted).

With respect to Plaintiffs' allegation of wire fraud, Plaintiffs assert in a conclusory fashion that Defendants Barden and Flick "used a 'wire' communication to communicate the scheme to Bonacio [Construction]."  Dkt. No. 1 at ¶ 150.  Plaintiffs fail to specify the contents of the

---

[8] To the extent that Plaintiffs claim that falsely certifying FOIL records constitutes mail or wire fraud, Plaintiffs have not plead a scheme to obtain money or property with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

14

communication or identify any material misstatements.  *See Campos v. Lavinsky*, No. 22-cv-1278, 2022 WL 16950054, at *3 (E.D.N.Y. Nov. 14, 2022) (finding that a plaintiff must "specify the statements he claims were false or misleading, give particulars as to the respect in which the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements" (alterations omitted)).  "[T]he transfer of . . . information from one [person] to another is not inherently fraudulent."  *Williams*, 889 F.3d at 125.  Accordingly, Plaintiffs fail to sufficiently allege a predicate act of wire fraud.

Plaintiffs' allegations of mail fraud also fail for similar reasons.  Plaintiffs allege that B&B Plumbing mailed a contract to Plaintiff Dicenzo on October 3, 2018 seeking to buy the Property, and that Defendant Barden had knowledge of the Bonacio Defendants' offer to buy the Property because Plaintiff Dicenzo met with Defendants Barden and Flick the same day to ask why the Property was excluded from the WASAD.  *See* Dkt. No. 1 at ¶¶ 151-152, 176-178; *see also* Dkt. No. 1-54.  Again, Plaintiffs assert in a conclusory fashion that Defendants committed mail fraud, without alleging any material misrepresentations.  Plaintiffs do not allege that the letter from B&B Plumbing expressing continued interest in purchasing the Property contains false or fraudulent statements.  Rather, Plaintiffs allege that Defendants Flick and Barden conspired with the Bonacio Defendants to pressure Plaintiffs to sell the Property.  *See* Dkt. No. 1 at ¶¶ 151-152, 176-178.  Such allegations do not constitute a material misrepresentation, and accordingly, Plaintiffs fail to plead a predicate act of mail fraud.

Plaintiffs' allegations of bribery also do not constitute predicate acts because Plaintiffs' allegations fail to state a violation of either federal or state bribery statutes.  "In order for bribery to constitute a predicate act under [Section] 1961(1), the acts alleged must violate either 18 U.S.C. § 201 or constitute conduct 'chargeable under State law and punishable by imprisonment for more

15

than one year.'" *Lynch*, 232 F. Supp. 3d at 466 (quoting 18 U.S.C. § 1961(1)).

As an initial matter, Plaintiffs cannot allege predicate acts of bribery under federal law because 18 U.S.C. § 201 only prohibits bribing federal public officials, and none of the Defendants are federal officials within the meaning of 18 U.S.C. § 201(a)(1). *See Gokhberg v. 200 Corbin Owners Corp.*, No. 24-cv-7010, 2025 WL 2782547, at *5 (E.D.N.Y. Sept. 30, 2025); *see also See United States v. Aloi*, 449 F. Supp. 698, 709 n.14 (E.D.N.Y. 1977) (holding that a city official was not a federal public official under Section 201).

Plaintiffs also fail to plead facts that would plausibly state a violation of New York bribery statutes. "Under New York law, a 'person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.'" *Mackin v. Auberger*, 59 F. Supp. 3d 528, 553 (W.D.N.Y. 2014) (quoting N.Y. Penal Law § 200.00). Here, Plaintiffs allege that the Bonacio Defendants: (i) cut a deal with City Council members in the form of "public gifts" to the City to avoid paying water and sewage connection fees; (ii) "reaped a windfall of $5,000 or more" as contractors for the Intrada apartment complex due to Defendant Torpey's willingness to approve a site plan modification; and (iii) offered Defendant Kelly a position at one of Bonacio Construction's subsidiaries in exchange for her vote in favor of the UDO. *See* Dkt. No. 1 at ¶¶ 129, 137-138, 293-294. But Plaintiffs' allegations are conclusory—they fail to allege any facts indicating an agreement or understanding between the Bonacio Defendants and Saratoga Defendants. "[W]ithout additional factual allegations—at a minimum, an allegation of some communication between the [D]efendants indicating an agreement to engage in the act constituting bribery—the plaintiff[s] ha[ve] not nudged [their] claims across the line from conceivable to

16

plausible." *Mackin*, 59 F. Supp. 3d at 554 (internal quotation marks, citation, and alterations omitted).  Accordingly, Plaintiffs fail to allege a predicate act of bribery.

Lastly, Plaintiffs fail to sufficiently allege that Defendants engaged in the predicate act of extortion.  Under federal law, extortion is defined under the Hobbs Act as the "obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear, or under color of official right." *Avangrid Networks, Inc. v. Sec. Limits, Inc.*, No. 22-cv-9622, 2026 WL 504735, at *4 (S.D.N.Y. Feb. 23, 2026) (citing, *inter alia*, 18 U.S.C. § 1951(b)(2)).  Under New York law, a person obtains property by extortion when "he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will (i) cause physical injury to some person in the future; (ii) cause damage to property; (iii) engage in other conduct constituting a crime; or [engage in certain other coercive actions]."  N.Y. Penal Law § 155.05.  Here, Plaintiffs do not allege that any Defendants obtained Plaintiffs' money or property, or that they did so through wrongful means.  An unaccepted offer to purchase Plaintiffs' Property or the denial of Plaintiffs' SUP application, without allegations that Defendants actually obtained the Property or exercised any force or threat of force to take the Property, does not constitute extortion.  *See Sekhar v. United States*, 570 U.S. 729, 734 (2013) (noting that obtaining property under the Hobbs Act and New York law requires that the extortionist "gain possession" of the property); *U.S. v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 483 (E.D.N.Y. 2007) (finding pleading insufficient where it "does not state that any defendant employed force, violence, or fear, or a threat of the same").  Accordingly, Plaintiffs fail to plead a predicate act of extortion.

Because Plaintiffs fail to sufficiently plead the commission of at least two predicate acts by Defendants, the Court grants Defendants' motions to dismiss Plaintiffs' Section 1962(c) RICO claim.

### 2. RICO Conspiracy

Plaintiffs' RICO conspiracy claim fails as well. To adequately allege a RICO conspiracy under Section 1962(d), "a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions." *Williams*, 889 F.3d at 124 (internal quotation marks and citation omitted). Specifically, a plaintiff must allege an agreement to commit predicate acts, *i.e.*, that the defendant knew about and agreed to facilitate the RICO scheme. *Murphy v. Onondaga Cnty.*, No. 18-cv-1218, 2022 WL 819281, at *6 (N.D.N.Y. Mar. 18, 2022) (citing, *inter alia*, *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

Even construed liberally, Plaintiffs' Complaint contains no facts indicating that Defendants entered into an agreement to commit RICO violations. *See Campos*, 2022 WL 16950054, at *3 ("Because the core of a RICO civil conspiracy is an agreement to commit predicate RICO acts, such a complaint, at the very least, must allege specifically such an agreement." (internal quotation marks and brackets omitted)). Moreover, even if Plaintiffs did allege an agreement among Defendants, Plaintiffs' RICO conspiracy claim must fail because Plaintiffs allege a conspiracy "to commit the same substantive RICO violations we have deemed insufficiently pled, and the [P]laintiffs have not alleged any further acts that, if carried out, would have satisfied RICO's requirement of a pattern of racketeering." *Williams*, 889 F.3d at 126; *see also Aronov v. Mersini*, No. 14-cv-7998, 2015 WL 1780164, at *7 (S.D.N.Y. Apr. 20, 2015). Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' RICO conspiracy claim.

### 3. RICO Injury

In the alternative, Plaintiffs lack standing to bring their RICO claims. "RICO standing is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted). To have standing, Plaintiffs' alleged injury to their business or property must be caused by the conduct constituting the RICO violation and their actual injury must be clear and definite. *Id.*; *see also Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Mkts., LLC*, 347 F. App'x 711, 713 (2d Cir. 2009) (explaining that where the extent of damages is unknown, a RICO injury remains speculative, unprovable, and insufficient for purposes of RICO standing).

Here, the Complaint alleges, without specificity, that Plaintiffs suffered injury to their "real property and intangible property interests" due to Defendants' racketeering activities. *See* Dkt. No. 1 at ¶ 352. In their opposition papers, Plaintiffs specify that such injuries include the "suspension of operations, unnecessary upgrades, legal expenditures to correct their address and redress their civil rights, ongoing maintenance and operational expenses, investment costs to the [P]roperty for auto sales, [and] the intangible right to conduct their business and control their assets free from interruption[.]" Dkt. No. 45 at 27. Such allegations are speculative and indefinite, and thus, cannot support Defendants' RICO claims. *See, e.g.*, *Town of Mamakating, N.Y. v. Lamm*, No. 15-cv-2865, 2015 WL 5311265, at *9-10 (S.D.N.Y. Sept. 11, 2015) (finding that plaintiffs' allegations that "they were induced to rezone and transfer territory . . ., that invalid voters have cast and will cast votes in [local] elections, that [local] officials were corrupted through bribery . . ., [and] that plaintiffs' ability to promote future development is inhibited by defendants' control of waste water treatment capacity" are not cognizable injuries under RICO), *aff'd sub nom. Town of Mamakating, New York v. Lamm*, 651 F. App'x 51 (2d Cir. 2016). Moreover, the payment of legal

19

fees to redress alleged violations to civil rights does not constitute a cognizable RICO injury because the Complaint "is devoid of any allegations relating to these injuries, and, in any event, [P]laintiffs fail to plausibly show that such injuries were proximately caused by [D]efendants' alleged racketeering activity." *Id.* at *9 n.9 (citing *Hecht*, 897 F.2d at 23-24). Accordingly, the Court alternatively dismisses Plaintiffs' RICO claims for lack of standing.[9]

### C. Section 1985(3)

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: '1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)) (citing 42 U.S.C. § 1985(3)). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). Moreover, "[m]ere conclusory or general allegations of a conspiracy are insufficient to state a claim" under Section 1985. *Hamza v. Kotsidis*, No. 25-cv-

---

[9] The Court also notes that Plaintiffs failed to comply with Local Rule 9.2, which requires that in any action in which a party asserts a claim under RICO, "the party asserting such a claim shall file a RICO statement within thirty (30) days of the filing of the pleading containing such claim." N.D.N.Y. L.R. 9.2. Plaintiffs filed their Complaint on December 12, 2024. Dkt. No. 1. Thus, Plaintiffs had until January 13, 2025 to file their RICO statement in accordance with Local Rule 9.2. Instead, Plaintiffs filed their RICO statement one day late, on January 14, 2025. Dkt. No. 6. "On this ground alone, the Court can dismiss Plaintiffs' Complaint." *Poole v. Bendixen*, No. 20-cv-697, 2021 WL 3737780, at *12 (N.D.N.Y. Aug. 24, 2021). Because Plaintiffs' RICO claims are dismissed for failure to state a claim, the Court need not address whether Plaintiffs' failure to comply with Local Rule 9.2 justifies dismissal "for this reason alone." *Pierce v. Homecomings Fin., LLC*, No. 17-cv-882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017).

968, 2025 WL 3295404, at \*27 (N.D.N.Y. Nov. 26, 2025) (citations omitted).

Here, even read in the light most favorable to Plaintiffs, the Complaint fails to allege any racial or class-based discriminatory animus. Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' Section 1985(3) conspiracy claim. *See Schachtler*, 2024 WL 4025862, at \*13 (dismissing plaintiffs' Section 1985(3) claim for failure to allege class-based animus, and noting that holding otherwise "would enable innumerable tort plaintiffs to assert causes of action under [Section] 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with" (internal quotation marks and citations omitted)).

## D. Section 1983

Plaintiffs bring five Section 1983 claims against the Saratoga Defendants, except for Defendant Moran, alleging equal protection, due process, freedom of speech, and "inverse condemnation" claims under the First, Fifth, and Fourteenth Amendments. *See* Dkt. No. 1 at ¶¶ 353-366, 374-390. For the reasons discussed below, the Court grants Defendants' motions to dismiss these claims as well.

### 1. Personal Involvement

"It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show 'the defendant's personal involvement in the alleged constitutional deprivation.'" *Enders v. Boone*, 658 F. Supp. 3d 70, 90 (N.D.N.Y. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted)), *aff'd sub nom. Siano Enders v. Boone*, No. 23-823, 2024 WL 3518058 (2d Cir. July 24, 2024). A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Here, Plaintiffs fail to allege that Defendants Barden, Flick, or O'Neil voted on Plaintiffs' SUP application, were present during the vote regarding Plaintiffs'

21

SUP application, or were present during any of the Planning Board meetings where Plaintiffs' SUP application was reviewed. Plaintiffs also do not allege that Defendants Barden, Flick, or O'Neil participated in the development or passage of the UDO. Accordingly, Plaintiffs' Section 1983 claims must be dismissed against Defendants Barden, Flick, and O'Neil based upon their lack of personal involvement.

### 2. *Monell*

Plaintiffs' Section 1983 claims against the City must also be dismissed because Plaintiffs have not plausibly pled a *Monell* claim. Municipalities are not liable under Section 1983 "unless action pursuant to official municipal policy of some nature causes a constitutional tort." *Glassman v. City of New York*, 557 Fed. Appx. 97, 98 (2d Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "To bring a claim for municipal liability under *Monell*, [a plaintiff] must plausibly allege the existence of an official policy or custom that caused him to be denied a constitutional right." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 138 (N.D.N.Y. 2024) (citations omitted). "*Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order)). "Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell*

22

claim." *Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) (internal quotation marks and citation omitted).

Here, Plaintiffs' allegations are conclusory and fail to sufficiently plead a *Monell* claim. Specifically, Plaintiffs allege that the City "developed, implemented, enforced, encouraged, and sanctioned de facto illegal policies, practices, and/or customs . . . in the form of offering a public benefit or public improvement or pay an illegal tax, in exchange for [Plaintiffs'] constitutional right to use [Plaintiffs'] property." Dkt. No. 1 at ¶ 380. Plaintiffs further allege that "[t]he passage of the UDO cemented the City's 'pay-to-play' policy and de facto illegal practices." *Id.* at ¶ 183. However, Plaintiffs fail to allege any specific facts from which a 'pay-to-play' policy, or any other policy, practice, or custom, could be inferred that could support a plausible *Monell* claim. *See, e.g.*, *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536-37 (2d Cir. 1993) (affirming dismissal of *Monell* claim where "[t]he complaint contained only conclusory and speculative assertions" that the alleged conduct occurred "pursuant to the practice, custom, policy and particular direction of" the supervisory official). Accordingly, Plaintiffs' Section 1983 claims against the City must be dismissed.

### 3. Legislative Immunity

Plaintiffs' Section 1983 claim against Defendant Kelly must also be dismissed because she is entitled to legislative immunity. "Legislative immunity is a form of absolute immunity reserved for officials acting within the sphere of legitimate legislative activity." *Anderson Grp., LLC v. Lenz*, 336 F. App'x 21, 23 (2d Cir. 2009) (citation omitted). However, officials cannot be immune from suit for administrative acts. *See Belyea v. City of Glen Cove*, No. 20-cv-5675, 2022 WL 3586559, at *19 (E.D.N.Y. Aug. 22, 2022) (citation omitted). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998).

23

Here, Plaintiffs allege that Defendant Kelly suppressed Plaintiff Dicenzo's First Amendment right to free speech during the City Council meeting that adopted the UDO on December 21, 2021. *See* Dkt. No. 1 at ¶¶ 386-390. According to Plaintiffs, on December 21, 2021, Plaintiff Dicenzo "waited for his turn to speak on the UDO matter . . . but the public comment period was abruptly ended." *Id.* at ¶ 301. Courts in this District have concluded that this type of activity—adopting an ordinance to rezone a district—is legislative. *See Anderson Grp., LLC v. City of Saratoga Springs*, 557 F. Supp. 2d 332, 345 (N.D.N.Y. 2008) (concluding that legislative immunity protected members of the Saratoga Springs City Council who voted to rezone a district); *see also 33 Seminary LLC v. City of Binghamton*, 120 F. Supp. 3d 223, 256 (N.D.N.Y. 2015) (noting that "the Second Circuit has recognized that members of a town board may be entitled to legislative immunity . . . [for] legislative activity, such as the adoption of zoning law amendments"), *aff'd sub nom. 33 Seminary LLC v. The City of Binghamton*, 670 F. App'x 727 (2d Cir. 2016). Moreover, while the specific involvement of Defendant Kelly during the December 21, 2021 City Council meeting is unclear from the face of the Complaint, legislative immunity covers all aspects of the legislative process, including introducing a measure for a vote by a legislative body, even when performed by an executive official. *See NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 192 (2d Cir. 2019). Here, facilitating a City Council meeting, including its public comment period, during which the City Council voted to adopt the UDO is an act that is legislative in nature. Accordingly, the Court finds that Defendant Kelly is entitled to legislative immunity.

### 4. Qualified Immunity

Lastly, Plaintiffs' Section 1983 claims against the remaining Saratoga Defendants—Defendants Torpey, Boivin, and Horton—must be dismissed because they are entitled to qualified

immunity.[10]  Courts apply "a two-step analysis to determine whether qualified immunity bars a plaintiff's claim against government officials for civil damages related to actions taken in the course of their official duties." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (citing *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019)). "Pursuant to that analysis, qualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks, citations, and brackets omitted). Here, Plaintiffs allege that Defendants Torpey, Boivin, and Horton violated Plaintiffs' constitutional right to be free from disparate treatment and the unequal application of the law. Dkt. No. 1 at ¶ 362. Specifically, Plaintiffs allege that Buenos had the right to have its 1971 SUP recognized and avoid the process of obtaining another permit. *Id.* at ¶ 364.

"The threshold issue in determining the applicability of a defendant's qualified immunity defense in a zoning context is whether the plaintiff had a 'clearly established right' to the permits at issue." *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 415 (E.D.N.Y. 2021) (quoting *Natale v. Town of Ridgefield*, 927 F.2d 101, 105 (2d Cir. 1991)) (brackets omitted). "If the claim involves a government-issued license or permit, a legitimate claim of entitlement will be found to exist where, under applicable state law, absent the alleged denial of due process, there is either a

---

[10] Defendants Torpey, Boivin, and Horton are not entitled to legislative immunity because their acts are administrative in nature. "Acts are administrative if they impact particular individuals rather than a community, or if the factors considered in adopting the legislation relate to specific individuals, instead of general policy implications." *Belyea v. City of Glen Cove*, No. 20-cv-5675, 2022 WL 3586559, at *19 (E.D.N.Y. Aug. 22, 2022) (internal quotation marks and alterations omitted) (citing *Orange Lake Assocs., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1219-20 (2d Cir. 1994)). Here, the December 9, 2021 vote by the Planning Board members, including Defendants Torpey, Boivin, and Horton, to deny Plaintiffs' SUP application, is administrative in nature because it impacts Plaintiffs in particular. *See Anderson Grp., LLC v. City of Saratoga Springs*, 557 F. Supp. 2d 332, 345 (N.D.N.Y. 2008) (holding that actions taken on plaintiff's SUP by the Board were administrative in nature).

25

certainty or a very strong likelihood that the application would have been granted." *Bristol v. Town of Camden*, 669 F. Supp. 3d 135, 150 (N.D.N.Y. 2023) (internal quotation marks and citations omitted).

Here, Saratoga Springs' zoning laws vested considerable discretion in the Planning Board with respect to granting special use permits. *See* Dkt. No. 38-7.[11]  Accordingly, the Court finds that Plaintiffs did not have a cognizable property right in the SUP they sought. *See, e.g.*, *Singer v. City of New York*, 417 F. Supp. 3d 297, 322-23 (S.D.N.Y. 2019) (concluding "that an agency charged with issuing permits has discretion sufficient to deny a claim of entitlement to a permit where the agency is tasked with determining an application's compliance with applicable laws and regulations—even where, upon a showing of compliance, issuance of the permit is mandatory"); *Nardiello v. Town of Oyster Bay*, No. 15-cv-292, 2016 WL 1464557, at *5 (E.D.N.Y. Apr. 12, 2016) (finding no clear entitlement to permit, and thus no federally protected property right, where the issuing authority had discretion to determine if the proposed work was safe and in compliance).

Thus, because Plaintiffs did not have a clearly established right to have their 1971 SUP recognized or their 2020 SUP application granted, Defendants Torpey, Boivin, and Horton are entitled to qualified immunity.[12]

---

[11] On a motion to dismiss, courts may consider matters of which judicial notice may be taken. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).  Here, the Court takes judicial notice of the portion of the City's zoning ordinance that relates to special use permits. *See 33 Seminary LLC v. City of Binghamton*, No. 11-cv-1300, 2012 WL 12888394, at *6 (N.D.N.Y. Apr. 19, 2012) (noting that the Court may take judicial notice of provisions of a Town or City Code) (citing *Missere v. Gross*, 2011 WL 6030665, at *5 (S.D.N.Y. 2011)).

[12] Because the Court dismisses Plaintiff's Section 1983 claims, the Court does not reach the issue of whether such claims are time-barred, or whether the Court should abstain from exercising jurisdiction over such claims.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motions to dismiss, Dkt. Nos. 37, 38, 41, are **GRANTED**; and the Court further

**ORDERS,** that the Clerk shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 12, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge